Second case is Armada v. Amcol. Mr. Van Flake. Yes, Your Honor. The district court below erroneously fashioned a rule that categorically excluded all foreign persons or entities from ever being able to assert a domestic injury under RICO. However, the RICO Act does not specifically preclude foreign persons or entities from asserting a claim under RICO, nor does it specifically limit its application to U.S. persons or entities. In RJR Nabisco, the Supreme Court explicitly stated that its requirement of a domestic injury does not preclude a foreign person or entity from asserting a claim for RICO. However, the way in which the district court below defines domestic injury, it does just that every single time. Uniformity in the application of a federal statute is key. With regard to RICO, Congress intended it to be broadly applied. By applying state law to determine whether a plaintiff has asserted a domestic injury... Mr. Van Praat. Yes, Your Honor. I take it that you believe that the Second Circuit has misread RJR Nabisco with the Baskunin case. Is that correct? No, Your Honor. I think that the Baskunin case issued by the Second Circuit was a proper issuance of a rule with regard to the application of the Supreme Court's admonitions and language in the RJR Nabisco case. The Second Circuit Court of Appeals... ...judgments, awards, associated litigation rights, which are clearly intangible property interests, and as such, the locational nexus for that alleged injury should be the plaintiff's residence, of course, which here is foreign. I want to ask you, is the domestic injury in this case dependent on the fact that the arbitral award was recognized in New York? In other words, would we have a domestic injury if Armada was just trying to enforce the arbitral award and the defendant engaged in the exact same conduct? I disagree, Your Honor. It is the... No, that's the question. She didn't make a statement. She asked a question. No, no, that's my question. Well, my answer is, Your Honor, is that the wrongful conduct of the AMCO defendants in violation of RICO, its racketeering conduct, and its use of mail-and-wire fraud on various cases, that conduct is what caused the injuries to the plaintiff here, Your Honor, not the arbitration award. It was their conduct that caused the injuries to the plaintiff. Yeah, but what's the injury? The injuries are that they diminished and depleted assets of their joint venture at Ashapura to prevent the plaintiff from enforcing its American judgments, its causes of action, and its litigation rights, Your Honor. That's not domestic, though, is it? Yes, it was domestic because all of these actions took place in the United States from Illinois. But the end result is a reduced or, I guess, eliminated value of, what is it, Ashapura? Ashapura. Ashapura. And, unfortunately, it drained the assets, and that injured the company in... Well, they drained... Where are they from, anyway, India? They drained the assets of Ashapura and kept it for themselves. Amco was the beneficiary of these racketeering acts. They conspired with Ashapura to deplete and diminish the assets of Ashapura to its benefit. It was a substantial minority shareholder that had tremendous insider influence on the activities of Ashapura. There may be some claim beyond RICO. That's the problem. This is a RICO case, and that has certain criteria. Yes, well, we have the predicate acts. I think there are probably other... We have the predicate acts, Your Honor. Okay, you have that. And we have the other bases for making a RICO claim, as we've alleged in the first amended complaint. So we feel that we have a very legitimate RICO case. You have argued that the property interest at issue here is the judgment, the awards, and the litigation right. Aren't those intangible interests? shouldn't it have as its locational nexus the residence of the plaintiff under Biscannon, which you say you agree with? Well, I agree with the Second Circuit decision in Biscannon. I don't agree with the lower court decision. Far from it. But we have cases such as the Baldwin case and the Keystone Y case in this jurisdiction and other cases we cited that say that causes of action are property. You have the Teton case, which says that a judgment is property. We submit that these are properties, and these are tangible properties. A U.S. judgment is an asset. It's something very tangible as are causes of action. These are tangible assets. You know, the district court noted that a number of your allegations as to the RICO claim include conduct that occurred prior to the judgment and the arbitration awards. How then could those allegations relate to an injury to the property interests that you are alleging here? Well, this was a continuing conspiracy. No, no. That once ASHA-PERA became insolvent, they colluded with AMCO to diminish or delete or deplete the assets of ASHA-PERA to benefit the joint ventures in India and AMCO themselves. Uniformity in the application of a federal statute is key. With regard to RICO, Congress intended it to be broadly applied. By applying state law to determine whether a plaintiff has asserted a domestic injury, the ability to uniformly interpret a federal statute has been constricted. The court below restricted the use of RICO to only U.S. citizens in violation of the Supremacy Clause of the United States. Thus, if Armada was a U.S. citizen using the same residency standard, the court below would have found Armada to be a proper plaintiff. We request, as the Second Circuit Court of Appeals held in reversing Baskinon, that this court should adopt a definition or test of domestic injury that looks to the location of the property injured by a U.S. defendant's wrongful conduct. Here, Armada's property in the form of United States judgment, cause of action, and litigation rights are United States property. The court below did not dispute this because defendant's wrongful conduct injured plaintiff's property located in the United States. Armada has alleged a domestic injury. The decision of the court below should be reversed and the case remanded to the court below. Thank you. Thank you. Thank you. May it please the court. Mr. Byrne. My name is Tom Byrne. I represent the appellees. Our position is that a domestic injury, if this case states a claim on the pleadings for domestic injury, then the principle against the presumption against extraterritoriality that was applied in RJR Nebraska would be nothing more than a pile of shredded wheat. Let's look at the nature of the injury here. These parties, Ashapura and the plaintiff appellant, entered into a contract in 2008 in South Asia for the delivery of bauxite in South Asia. No U.S. involvement. There were breaches of that contract, and those breaches were determined and later adjudicated in London to be breaches of contract by Ashapura. That was in the London arbitration. Again, everything about the matter is foreign. The injury to the plaintiff is the failure to collect the foreign debt. Simply domesticating a judgment in the United States does not domesticate a foreign injury if RJR Nabisco is to have any meaning at all. If not here, where do you think Armada can bring an action for the conduct by the defendants? Is there a forum available to address it? Is it Singapore? Is it London? Where is it? Your Honor, I haven't analyzed that, but there's one immediate answer. Both of the parties, Ashapura and the appellant, are in bankruptcy proceedings. So there was an Indian bankruptcy proceeding involving Ashapura where presumably its creditors came forward and asserted their claims. Some of the complaints about my client's conduct have to do with the Chapter 15 proceeding in the United States, which was brought by Ashapura and opposed by the appellant in the United States, and those grievances should have been brought before the Chapter 15 bankruptcy court. Was that dismissed? It was dismissed, Your Honor, over the objection to U.S. administration made by the appellant. So again, everything about this case virtually has to do with foreign conduct, and any injury here has to be categorized as foreign if RJR Nabisco is really to have any meaning at all. Now, in the appellant's brief, the district court is faulted for applying conflict of law principles to the determination of where the injury was suffered. There's no reason at all why those principles shouldn't have some value in determining where an injury was suffered because conflict of law rules are often engaged in just that inquiry, and the district court properly looked to a long line of cases applying the restatement of conflict of laws to reach the determination that the injury must be suffered at the principal place of business. Now, the district court did not apply a categorical rule that every injury of a financial nature is suffered at the principal place of business of the plaintiff. The district judge held generally that so. There's no reason it shouldn't be so here where there are significant connections between the plaintiff's residence and the matters that originated the injury. Let's remember, this was a Singapore-Indian transaction, and applying and determining that any injury from breach of that original contractual relationship occurred in Singapore is completely fair and sound, and the district court applied that correctly. The Baskunin decision is quite helpful to our side, Your Honor. We think that the question was asked about its applicability. We think that the rule applied by the Second Circuit to tangible property only has no applicability to the intangible bundle of litigation rights that the appellant is asserting here. The property involved, the injury involved in Baskunin that the court upheld, that the court held could go forward at least after the pleadings, involved the theft of bearer securities from a New York bank deposit box and the theft of money from a New York bank account. The court went on at some length to explain that the downstream effects from an original foreign injury are not a domestic injury in the United States, and specifically in that case there were allegations of money laundering going on, funds stolen by the defendant allegedly in the Baskunin case and laundered through New York banks or a New York financial institution. The Second Circuit said that doesn't change the basic foreign injury into a domestic injury, and we think that ruling is sound. There are a number of cases since RJR came out in June of 2016 that apply the concept of downstream injuries. That is, where there's an original foreign injury, it doesn't become a domestic injury because the money or other valuables are pursued into the United States. Those downstream effects, several courts, and we've cited the district court cases in our brief, and we think Baskunin applies the same rule without using the word downstream, but it basically applies the same rule, and it's a sound one, that those later effects that follow after the original injury should not turn a basic foreign injury into a domestic one. Do you believe that any injury to an intangible property right should be considered to occur at the residence of the plaintiff? Your Honor, that was the ruling in this case by the district court. We think it's a sound one. It doesn't necessarily have to apply without qualification in every single situation, but here we have, in addition to that relationship between the injury and the principal place of business of the appellant, we also have the significant other connections between this matter and the injuries involved and Singapore, where the appellant has its principal place of business. That's where the transaction originated that led to the breach, that led to the injury, that led to the arbitration award, and eventually swam downstream to the United States in the form of these claims. Other than the hiring lawyers in the United States, the appellant never conducted any business in the United States, never set foot here. So there's no claim of any injury to business in the United States. There's a claim of injury to property, but property consists only of the bundle of litigation rights that the appellant received when it domesticated its foreign arbitration awards. And so we would ask the court to hold that merely domesticating a judgment does not turn a foreign injury into a domestic injury, and we ask the court to affirm. Thank you. Mr. Van Pragen. I want to point out to the court that the Chapter 15 petition was dismissed because Armada, Ashapur, and AMCO exhibit bad faith in not complying with the court's orders. So the same type of conduct they conducted towards Armada, they conducted towards the bankruptcy court in New York who dismissed, and I think it's the only Chapter 15 dismissed thus far, dismissed that Chapter 15 petition to allow parties to continue their lawsuits against Ashapur and AMCO, which were in existence and automatically stayed when the Chapter 15 was filed. Where were those lawsuits? Well, there were lawsuits in New York, and there was another lawsuit in Illinois, and those are the only two that I still remember. Were they suing individuals? No, they were maritime attachment cases. What happened to those? They kind of went away of nothing because they couldn't attach any assets because Ashapur and Armada were successful in dispersing the assets of Ashapur to AMCO and Ashapur to preclude the attachments from taking place. As we pointed out in our brief, they even did a euro currency scheme where they changed the payment of contracts from dollars to euros because euros cannot be attached under American maritime law. This is the kind of conduct they engaged in, and as far as downstream conduct is concerned, it's the conduct that we are reciting here before this court and in our briefs that is why we're suing here. If they had not depleted the assets of Ashapur to benefit themselves, we would have been able to enforce our judgments and causes of action and litigation rights, but instead, like other parties, we were left holding a bag. We didn't get anything out of it, basically. We had one positive collection here in Illinois, in Chicago, for the payment of excess proceeds on a dividend payment. We were successful in getting a turnover of those funds by the court below, but other than that, that was it. None of these millions of dollars in fraudulent transfers and write-offs of worthless debt, all this stuff was done to benefit AMCO and was orchestrated from Illinois by an Illinois company that has its headquarters here in Illinois. Thank you very much, Your Honor. Thank you, Mr. Reagan. Thank you to both parties. The case will be taken under advisement.